# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00952-COA

**STACY LIDDELL A/K/A STACY HENRY LIDDELL**                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                           **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/28/2021 |
| TRIAL JUDGE: | HON. ADRIENNE ANNETT HOOPER-WOOTEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | JODY EDWARD OWENS II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/02/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., GREENLEE AND McDONALD, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1. Stacy Liddell appeals his conviction for second-degree murder. Liddell's sole argument on appeal is that the circuit court erred in failing to declare a mistrial after the district attorney made multiple public comments to media outlets regarding Liddell's case.

¶2. After our review, we find no abuse of discretion. We accordingly affirm the judgment of the Hinds County Circuit Court.

## FACTS

¶3. Liddell was inside his home on the evening of April 21, 2019, when he observed two

males on bicycles stop in front of his house. Liddell testified that he stood at his window and watched as one of the individuals entered Liddell's yard, took one of his bicycles, and removed it from the yard. Liddell stated that he banged on the window and ordered the individual to stop and return the bicycle. According to Liddell, the individual continued to walk away with the bicycle, so Liddell retrieved his gun. Liddell testified that as he was unlocking his front door to yell at the individual, he heard two or three gunshots. Liddell then rushed out of his house and fired a warning shot with his gun. Liddell ran toward the street to see which direction the individuals went. Liddell testified that when he looked to the right, he spotted three individuals on bicycles. Liddell then heard gunshots coming from the direction of the individuals. In response, Liddell testified that he fired his gun in the direction of the individuals, striking fourteen-year-old Roderick Johnson. Johnson ultimately died as a result of his gunshot wound.

¶4.     A Hinds County grand jury subsequently indicted Liddell for the first-degree murder of Johnson. A trial was held in May 2021. At trial, Liddell admitted that he shot Johnson with his gun, but he testified that he did not purposefully shoot Johnson. Liddell explained that the individuals were shooting at him, and he returned fire in self-defense.

¶5.     On the morning of trial, before the jury was seated and prior to opening arguments, defense counsel moved for a mistrial or, in the alternative, entry of a gag order. Defense counsel asserted that the district attorney made statements to a local news station discussing the facts of Liddell's case and commenting on the availability of potential defenses;

2

specifically, whether the Castle Doctrine could apply in this case. The district attorney's comments were then published by the news station. Defense counsel argued that it was improper for the State to make such comments to the media, citing the Mississippi Rules of Professional Conduct[1] and Mississippi Rule of Criminal Procedure 18.9.[2] Defense counsel also claimed that the district attorney's office was engaging in a pattern of commenting about cases on the morning of trial. The circuit court admitted a printout of the news story into evidence.

¶6.     The State responded that a gag order would not be appropriate in this case because the trial was open to the public and being live-streamed. The State also asserted that the jury had been instructed by the circuit court not to review, watch, or talk about any media coverage of the case. The State argued that Rule 18.9 deals with matters relating to the merits of the case, and the State claimed that the district attorney did not discuss the merits of the case in the news story. The State explained that because the circuit court had granted a motion in limine excluding any reference to the Castle Doctrine during trial, the Castle Doctrine would not be considered a part of the case's merits. The State maintained that the news story simply contained a factual basis of the case that could have been obtained from Liddell's indictment.

¶7.     In response, defense counsel informed the circuit court that certain facts reported in

---

[1] Mississippi Rule of Professional Conduct 3.6 prohibits a lawyer from making "an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding."

[2] *See infra* ¶14 for the pertinent text of Rule 18.9.

the news story were not contained in the indictment. The circuit court agreed that the district attorney, or any representative of the district attorney's office, speaking to the media about facts in the case that were not disclosed in the indictment was "clearly unethical, clearly inappropriate[,] and should not have taken place." The circuit court accordingly entered a gag order for every representative of the district attorney's office, including the district attorney, until the conclusion of the trial.

¶8.     Later in the day, defense counsel renewed his motion for a mistrial. Defense counsel asserted that by that point in the day, several articles about the case had been published in multiple news outlets. The circuit judge stated that because the motion for a mistrial was based solely on the news articles, she would poll the jury to see whether they had seen the articles or were even "aware that these articles exist." The circuit judge would then base her ruling on the results from the jury poll.

¶9.     The circuit judge called in the jury and conducted a hearing. The circuit judge asked the jurors if they had seen or read anything in the media concerning the trial. Three jurors responded they had seen or heard that there was news coverage of the trial, but they did not read or watch the coverage. The circuit judge found that based on the statements from the three jurors who came forward, she did not believe the jury had read or considered anything from the media. The circuit judge further stated the jury indicated that they had followed the judge's instructions not to review, watch, or talk about any media coverage of the case. The circuit judge accordingly denied the motion for a mistrial.

4

¶10.    The trial continued, and the jury ultimately found Liddell guilty of second-degree murder.  The circuit court sentenced Liddell to serve a term of thirty years in the custody of the MDOC.

¶11.    Liddell filed post-trial motions, which the circuit court denied.  This appeal followed.

## STANDARD OF REVIEW

¶12.    We review a circuit court's denial of a motion for a mistrial for an abuse of discretion. *Smith v. State*, 158 So. 3d 1182, 1185 (¶9) (Miss. Ct. App. 2015).

## DISCUSSION

¶13.    Liddell's sole issue on appeal is whether the circuit court erred in denying his motion for a mistrial after the district attorney made multiple public comments about the trial that were then reported in media outlets.  Liddell also asserts that the circuit court should have made further inquiry into whether these media reports had any effect on the jury.  Liddell submits that the media reports containing the district attorney's statements may have influenced the jury and prohibited them from being able to fairly weigh Liddell's argument that he shot Johnson in self-defense.

¶14.    Mississippi Rule of Criminal Procedure 18.9, which governs prohibited disclosures, states:

> Prior to the conclusion of the trial, no defense attorney, prosecuting attorney, clerk, deputy clerk, law enforcement official or other officer of the court, may release or authorize release of any statement for dissemination by any means of public communication on any matter concerning:
>
> . . . .

5

(6) The defendant's guilt or innocence, or other matters relating to the merits of the case, or the evidence in the case.

MRCrP 18.9.

¶15. As stated, defense counsel moved for a mistrial on the grounds that the district attorney made statements to a local news station regarding facts of Liddell's case that were not contained in the indictment, in violation of Rule 18.9 and the Mississippi Rules of Professional Conduct. The circuit court stated that it was unethical and inappropriate for the district attorney to speak to the media about any facts in Liddell's case that were not disclosed in the indictment. The circuit judge then entered a gag order for every representative of the district attorney's office, including the district attorney, until the conclusion of the trial.

¶16. Later that day, defense counsel renewed his motion for a mistrial, and the circuit judge called in the jury and questioned them about whether they had read any news articles covering the trial, and whether they were aware such articles existed. Liddell acknowledges that only three jurors admitted to seeing that there was news coverage of the trial and that these jurors stated that they did not read any news articles or watch any news stories about the trial. However, Liddell argues that the circuit judge's questioning did not delve into whether these media reports would influence the jurors' deliberations or verdict.

¶17. "Whether to grant a motion for a mistrial is within the sound discretion of the trial court." *Smith*, 158 So. 3d at 1185 (¶9) (quoting *Gunn v. State*, 56 So. 3d 568, 571 (¶14) (Miss. 2011)). "The trial judge is permitted considerable discretion in determining whether

6

a mistrial is warranted since the judge is best positioned for measuring the prejudicial effect." *Tate v. State*, 912 So. 2d 919, 932 (¶41) (Miss. 2005). The Mississippi Supreme Court has stated that "[a] trial judge need declare a mistrial only when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant's case." *Hutto v. State*, 227 So. 3d 963, 984 (¶66) (Miss. 2017); *see also* MRCrP 23.5 (governing mistrials).

¶18.   This Court has examined whether a district attorney's pre-trial comments to a local newspaper obstructed the defendant's right to a fair trial. *Gulley v. State*, 779 So. 2d 1140, 1144 (¶12) (Miss. Ct. App. 2001). In *Gulley*, the defendant filed a motion for change of venue based on pre-trial publicity. *Id*. In support of his motion, the defendant cited comments the district attorney made to a local newspaper, which were published the day before jury selection. *Id*. at (¶¶13-14). After the circuit court denied the defendant's motion, the defendant appealed. *Id*. at (¶11).

¶19.   Upon review, this Court agreed that the district attorney's comments were improper and violated the rules prohibiting extrajudicial statements about the guilt or innocence of a defendant. *Id*. at 1147 (¶23). However, this Court stated that "an ethical violation by the prosecutor does nothing to negate the guilt of an indicted defendant," and any sanctions for such a violation "does not per se have any effect on the fairness of the trial." *Id*. After reviewing the record, this Court determined that "[d]espite the improper pretrial statements made by the district attorney, there is no evidence . . . suggesting that [the defendant] was denied his right to a fair trial by an impartial jury," explaining that "[v]oir dire of the

7

individual jury members showed that [the defendant] did not suffer any prejudice by such comments." *Id*. at 1147-48 (¶23). Accordingly, this Court held that the defendant's "rights to a fair trial were not abrogated." *Id*.

¶20.    In *Wells v. State*, 698 So. 2d 497, 504 (Miss. 1997), a case similar to the one before us, the defendant moved for a mistrial after the district attorney made improper statements regarding the defendant's case during an interview with a local news station. Prior to the interview airing, the circuit court instructed the jurors not to watch any news reports concerning the case. *Id*. After hearing arguments from counsel on the motion for a mistrial, the circuit court denied defense counsel's request to conduct individual voir dire of each juror. *Id*. Instead, the circuit judge conducted a jury poll and asked each individual juror whether they had watched any of the newscasts regarding the case. *Id*. at 504-05. Each juror indicated that he or she had not watched any newscasts regarding the case. *Id*. at 505. Based on the statements from the jury, the circuit court denied the defendant's motion for a mistrial. *Id*.

¶21.    On appeal, the defendant argued that the circuit court "erred in denying his motion for a mistrial without first questioning the jurors individually in chambers to determine whether any of them had seen the newscast." *Id*. Upon review, the supreme court held that the circuit court did not err in denying the motion for a mistrial, explaining that "[a]lthough the district attorney's television interview was inappropriate, the trial judge took adequate measures to ensure that such conduct did not prejudice the defendant." *Id*. at 505-06. The supreme court

acknowledged that "whenever there is a question of outside influencing of a jury, the trial judge himself ought to examine the jury carefully to ensure that the jury's deliberations are based on the evidence produced at trial and not extraneous matters." *Id*. at 505 (quoting *Williamson v. State*, 512 So. 2d 868, 882 (Miss. 1987)). However, the supreme court found that based upon the facts of the case before it, "individual polling of the jurors was sufficient for these purposes." The supreme court explained that if any juror had answered that they had seen the newscast, "then it certainly would have been appropriate to conduct individual voir dire in chambers to determine any prejudice to the defendant." However, all the jurors stated that they had not watched the newscast. The supreme court stated that "[w]e must assume that jurors answer truthfully when polled, else the entire polling procedure is rendered pointless." *Id*.

¶22. In the present case, the record reflects that the circuit judge reminded the jury numerous times not to read any news articles about the case or do anything to conduct their own investigation into the case. Prior to opening statements, the circuit judge instructed the jurors that they could not read newspaper articles about the case, listen to news reporting, look up anything on the internet or social media about the case or any of the people involved, or do anything to conduct their own investigation. When polling the jury after Liddell's renewed motion for a mistrial, the circuit judge reminded the jury of the instructions not to look at social media or any media coverage of the trial, or attempt to conduct their own investigation. Prior to recessing for the afternoon, the circuit judge again reminded the jury

9

not to look at social media or read any new articles concerning the trial. Prior to jury deliberations, the circuit judge instructed the jury through Jury Instruction 7 not to read anything about the case in the newspaper, listen to the radio, watch anything on television, or look at anything on the internet.

¶23. "This Court presumes that jurors have followed the instructions of the court, because to presume otherwise would render the judicial system inoperable." *Evans v. State*, 226 So. 3d 1, 26 (¶60) (Miss. 2017). The circuit judge's polling of the jury confirms that the jurors followed the circuit court's instruction not to read or watch any news stories regarding the case. As stated, "[w]e must assume that jurors answer truthfully when polled[.]" *Wells*, 698 So. 2d at 505.

¶24. After our review, we find that Liddell has not shown that he suffered "substantial and irreparable prejudice" to his trial based on the district attorney's comments to the media. *Hutto*, 227 So. 3d at 984 (¶66). We therefore find that the circuit court did not abuse its discretion in denying Liddell's motion for a mistrial.

¶25. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**